Case number 3-18-0549, People of the State of Illinois, Applee v. John Rice, Appellant. Thank you. Good morning. There are only two people, two judges showing on the screen. Justice Lytton will be the third member of the panel and he was unable to be here for the argument this to the tapes and participating in the discussion and the decision. Let's see. Ms. Donahoe? Yes. Good morning. You can start whenever you're ready. Thank you, Your Honor. So may it please the court. My name is Katherine Donahoe of the Office of the State Appellate Defender and I represent the appellant, John Rice. We're asking this court to reverse the John Rice's motion to quash arrest and suppress evidence because there was no reasonable articulable basis for the motor vehicle stop that led to his arrest. Officer Higgins of the Bolingbrook Police Department conducted a traffic stop based on a mistake of law that was objectively unreasonable. Rice was stopped on a state highway after changing lanes to get to an on-ramp for because she saw him begin a lane change as he passed through an intersection and before completely clearing the intersection. At that time, she testified she believed it was illegal to begin a lane change prior to clearing an intersection. She believed it was a violation of Illinois' improper lane usage statute, also known as the ILU statute. However, she made a statute requires only that a vehicle be driven as nearly as practicable within a single lane and that a driver not move from the lane unless the movement can be done safely. The statute does not prohibit a driver from initiating a lane change prior to clearing an intersection and the state presented no evidence or argument that Rice violated the ILU statute and indeed the police officer testified that she would not stop Rice again if this happened today. She testified that he signaled before shifting lanes, he didn't speed, he didn't obstruct other vehicles, and he changed lanes in a safe manner. So under High End v. North Carolina and is adopted by Illinois courts, a stop based on a mistake of law is valid only if the mistake of law was objectively reasonable. And despite some of the arguments the state has made in this trial court about whether this particular officer made a mistake. Again, even she testified she wouldn't stop him if this happened again. The statute was not ambiguous or vague. If a statute is ambiguous, then a mistake of law and interpreting that statute could be objectively reasonable. But here, the statute clearly didn't cover this driving maneuver. And it's clear in what it requires. It doesn't, you don't have to resort to a lot of different canons of interpretation in order to determine what it means. It's not subject to two or more interpretations. It just requires that a vehicle be driven as nearly as practicable within a single lane and that movement from the lane only be done when it can be done safely. So the state, in its brief points out that a statute may be ambiguous if it's subject to two or more interpretations. But here, again, this is not subject to two or more interpretations. And there is no per se violation when somebody begins to shift lanes prior to clearing an intersection. And even though the statute requires that a driver proceed safely when changing lanes, the word safe may be subject to different circumstances depending on a given case. There was no evidence that any of Mr. Rice's driving in this case was unsafe. And in fact, the police officer testified that after he cleared the intersection, he changed lanes in a safe manner. The state did present in its brief an alternate basis for the stop regarding the 100 foot signaling distance requirement for a turn. But as this court recently held in Kachkowski, the statute distinguishes between turns and lane changes. And so this requirement doesn't apply to lane changes. And Mr. Rice did signal even though it wasn't for 100 feet. So the motion to quash and suppress should have been granted because officer Higgins stopped Rice based on a mistake of law that was objectively unreasonable. The plain language of the statute is unambiguous insofar as it does not prohibit a driver from initiating a lane change prior to clearing an intersection. It requires only that the movement be made with safety. The police officer's testimony showed that on the day she stopped Rice, she mistakenly believed that beginning a lane change prior to clearing an intersection was a per se violation of the statute. But she testified that Rice otherwise drove safely and she did not observe any other traffic violations. So Rice asked this court to reverse the denial of his motion to quash his arrest and suppress evidence. And given that there was no other evidence to support the charges, his conviction should be reversed. Thank you. Any questions? No questions. Okay. Mr. Austell, good morning. Good morning. You can start whenever you're ready. Police court, counsel, my name is Mark Austell. I represent the people of the state of Illinois in this matter. As a personal note, I'd like to inform the court that this is my last oral argument. I've been honored to represent the people for nearly 12 years, but I'm retiring at the end of this month. Well, congratulations. Thank you, Justice. Yes, congratulations. And thank you for all of the really excellent work that you have done before this court. Thank you. I appreciate it. And I agree with that. Your Honor, as an initial matter, the court recently issued its decision, Kuskowski, as counsel mentioned in the ruling about the requirement to signal 100 feet in advance of a turn. In our brief, the people argued the 100 foot requirement applies to lane changes, and we withdraw that argument. In our briefs, the defendant acknowledged he did not file a post-trial motion, but he asserted his claim is not forfeited. And under Illinois authority, it appears that defendant's forfeiture may be excused where defendant raised the issue of a Fourth Amendment violation of the motion to suppress proceedings. And his constitutional claim could be raised in a post-conviction petition. But the U.S. Supreme Court in Hine held we're a mistake of law related to the antecedent question of whether it was reasonable for an officer to suspect the defendant's conduct was illegal. There was no Fourth Amendment violation in the first place. The Hine court held the Fourth Amendment is not violated where an officer conducting the traffic stop had an objectively reasonable, although mistakenly, that the law prohibited conduct, which was the basis for the stop. Under Hine, there is no constitutional violation of the facts of this case, and defendant has forfeited this issue. What was objectively reasonable about the officer's belief? The fact that the officer believed that it was illegal to make a lane change in an intersection, of course, is unreasonable. But under the facts of this case where it was dark, it was raining, there were five lanes of traffic, and the defendant pulled out in diagonal cross relays at the same time that he initiated his turn signal is the error here, the illegality in violation of the statute. But the police officer said that he drove safely. And the officer said that there's a quote I found on page 59 of the transcripts of the record. When asked if the defendant changed lane safety safely, Higgins replied, the left two lanes left, yes, meaning or implying that at least one of those lanes of the three, he was not moving safely. And of course, the statute requires that a driver may not move a vehicle from a lane of traffic until determining that he can do so safely. In this case, he could not have done so with the number of cars in the area and the conditions at that time. Did the officer charge him with unsafe lane usage? Improper lane usage, yes, Your Honor. No, unsafe is what I said. Oh, no, no. Unsafe is what you said is correct. But no, that was not the charge. In fact, the officer said it was a safe lane change, but that implies that no one had to stop, no one, there were no accidents involved in this. So he made it across the triple lane change safely in that respect. And it was the officer's testimony that the reason for the stop was her belief that he had to clear the intersection before he could change lanes? That was a mistake of law that she mentioned, that she believed that was the case. But she believed that he had violated the IOU statute was her statement. She didn't state specifically that she pulled him over because she believed that he couldn't have made that move in the intersection. And to be fair, we don't look at what this officer believed. We look at what an objectively reasonable police officer would believe under there. It doesn't matter, it doesn't make any difference whether she was had good faith or bad faith. It's what an objectively reasonable police officer would believe under the circumstances. Is that correct? That is correct, Your Honor. All right. Thank you. Getting back to the forfeiture, defendant had argued that Hine only applies when ambiguous law presents a harder, difficult question of statutory interpretation. The defendant claimed the IOU statute is not ambiguous. The statute states whenever any roadway is divided into two or more clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from a lane until driver is first ascertained that such movement can be made safely. And of course, the second district, Mueller concluded that this statute is not ambiguous, but it resorted to dictionary definitions, engaged in analysis of Illinois and foreign jurisdiction case law, and it considered various Illinois Secretary of State, federal agency, and private publications. The Donahoe court stated a statute is ambiguous if it is subject to two or more reasonable interpretations. And Donahoe ruled the court can consult interpretive aides when construing an ambiguous statute. And the people cited cases on pages seven through eight of our brief showing that section 11708 or 709A is ambiguous because it is subject to interpretation. In Guyton, the court ruled the license plate statute was ambiguous after analyzing aids to interpretation. And the court held the officer's objectively reasonable mistake or law provided the reasonable suspicion necessary to justify the stop on the Fourth Amendment. The people asked this court to reject Mueller and find that the IOU statute is ambiguous or at least key terms and elements of the offense up to the interpretation of the officer based on the facts and the road conditions at the time. Further, whether the facts proved violation of the IOU statute is subject to a reviewing court's interpretation on appeal. Therefore, the people maintained that under Hyndman and Guyton, the defendant has forfeited this issue. And the people stand on their brief or any other argument. Are there any other questions for me, your honors? Yeah, I have a question, a couple of questions about the claimed ambiguity here. Um, it sounds like what you're saying is that because the police officer can make a judgment as to whether or not the action that was taken by the driver was safe or unsafe, that that somehow makes the statute ambiguous. Is that what you're saying? That last portion about moving from the lane safely is subjective. How do you know whether this person driving the vehicle has indeed discovered that he or she could make a lane change safely? And all the officer is able to go on is the objective view of what a person has done at the time. And so it changes given the circumstances, whether or not the statute has been violated. The statute doesn't change. The interpretation of the particular action of the particular part or motorist may change, but the statute itself doesn't change. Well, that would be true in any unambiguous or any ambiguous statute. The language remains the same. It's how it's interpreted. And in this case, you can interpret it, that safe lane change language in a variety of different ways. And it's all fact dependent. Well, go ahead. Well, in this particular case, didn't the officer testify that there was nothing unsafe about the driver's move? In other words, the driver interfered with no other traffic, caused anybody else to have to break or swerve or anything like that? She said he did make the lane change safely. That's correct, your honor. Okay. Okay. All right. Thank you. Okay. I think there are no more questions, Mr. Ross or Ms. Donahoe. Is there any rebuttal? Yes, your honor. I'd just like to make a couple of points regarding the evidence at the proceedings. I heard counsel agree that it was unreasonable to believe that the ILU statute prohibited beginning a lane change prior to clearing the intersection. But the state has also argued that her testimony that he drove in a safe manner, that he changed those two lanes in a safe manner implies, I heard the state argue that that implies that the first lane change in the intersection was unsafe. However, she did not testify to that. She indicated that even at the time, she believed those lane changes were safe. Her concern was just about the one that was initiated prior to clearing the intersection. But it's important to note that she also testified. She would not issue a ticket if this happened again today, which is much stronger evidence that she believes the entire shifting of lanes was safe. And also with respect to whether the statute is ambiguous because safe can be something different in different circumstances. And a police officer has to make observations based on a particular case in the particular circumstances that doesn't make the statute vague. The statute is clear. It requires safety. And in this case, even if this court were to find that the word safe is vague or ambiguous, in this case, we don't have any evidence that Mr. Rice drove, that there was no doubt. There was no dispute that what he did was safe or unsafe. The police officer testified that it was safe. And also as far as the use of interpretive aids in Gaytan, the Illinois Supreme Court case did not say that just the mere use of interpretive aids renders a statute ambiguous. Gaytan said that a statute may be ambiguous when interpretive aids do not clarify the the meaning is clear. So for those reasons, we'd ask you to reverse the denial of the motion. Thank you. Thank you. We thank both of you for your arguments this morning. And again, Mr. Austell for your arguments over the years. We will take the matter under advisement along with Justice Litton and will issue a written decision. Thank you.